**LOCHNER et v FOUTS**

Ohio Appeals, 2nd Dist, Miami Co

No 347.   Decided Feb 17, 1936

Aaron H. Kessler, Laura, and William Harry Gilbert, Troy, for plaintiff in error.

Shipman & Shipman, Troy, for defendant in error.

## OPINION

By BARNES, PJ.

It is the theory of counsel for defendant that under this state of facts plaintiff is not entitled to recover, the claim being that since plaintiff never parted with title to the property and thereafter had adopted the remedy of repossessing himself of such property, he does not have any further cause of action against the defendants.

This is the major question involved in the controversy in this court.

It is passing strange, but so far as reported cases are concerned this question has apparently never been passed upon by any court in Ohio.

We do find an abundance of authorities relative to the nature and character of a conditional sales contract.

Prior to 1885 all questions relative thereto in Ohio were controlled by the common law.

Prior to the statutory enactment, the seller, under the Conditional Sales Contract had the absolute right to retake the property at any time when there was a default in any of the conditions, and this was true even though only an insignificant portion of the purchase price remained unpaid. There was no obligation to account or refund and the seller was entitled to retain everything that had previously been paid by the purchaser. Conditional sales contracts were usually entered into with purchasers of small means, wherein provision would be made for installment payments, and frequently it happened in the end that the purchaser would not only lose the installments paid but the property as well.

In 1885 the Legislature sought to remedy this harsh rule by providing that where property was sold under a conditional sales contract, it could not be repossessed where more than 25% of the purchase price had been paid, unless there was first made a refund of the excess, with an additional allowance for repair, damage and use during the time possessed by the purchaser. Under the act this amount could not exceed 50% of the purchase price. The violation

of the provisions of this act is made a misdemeanor.

As a part of the same act, it was also provided that conditional sales contracts would be invalid as against third persons obtaining rights or liens in good faith unless the contract was filed with the proper officer. The filing provisions were the same as chattel mortgages. Under the facts in the instant case the statute has no application.

Following this legislation, we also find reported cases dealing with certain phases of the Conditional Sales Contract as affected by statute, but in none of these reported cases is any reference made to rights or remedies of a seller to a balance due on his contract after repossessing.

We also find well defined authority in Ohio that the seller's right to repossess under conditional sales contracts is not exclusive. The Ohio courts have permitted bringing of a suit in equity to foreclose a vendor's lien under a conditional sales contract. When the seller follows this proceeding, it is said that he elects to recognize title in the purchaser.

There is also the right on the part of the conditional vendor to sue upon contract for the balance due and thereafter levy not only upon the property covered by the sales contract, but other property. Where the conditional vendor proceeds under either of these remedies, the Conditional Sales Act is not controlling and he need not make refunds. For full text and annotations of Ohio cases on Conditional Sales Contracts see **O. Jur., Vol. 35 (Conditional Sales) §§259 to 287** inclusive.

In the vital question involved in the instant case we must look to the decisions in other jurisdictions to ascertain whether or not precedents are established in such uniformity constituting a rule that the courts of this state should follow.

The compilers in Vol. 37 A.L.R., at page 91 have collected many, many cases from several states in the United States concerning this question. The author gives the following heading to the annotations: "RIGHTS AND REMEDIES AS BETWEEN PARTIES TO A CONDITIONAL SALE AFTER THE SELLER HAS REPOSSESSED HIMSELF OF THE PROPERTY." Under a sub-heading, "Rights and Remedies of Seller," the following text is given as comprising the general rule:

"It is a general rule that under the ordinary contract of conditional sale, which does not expressly confer upon the seller the right to recover the balance of the pur-

chase price after reselling the property for a sum less than remaining unpaid, if the seller takes possession of the property upon default of the buyer, and does so as owner, and as such owner sells or otherwise uses the property, he can not recover any portion of the unpaid purchase price."

This text in substance is also carried under the same sub-heading in 83 A.L.R., p. 960. The several cases cited being decisions of courts of last resort in other states fully support the text. We would call attention to the following elements in the general rule as quoted above: (1) The rule applies to the ordinary contract of conditional sale: (2) Where it does not expressly confer upon the seller the right to recover the balance of the purchase price after reselling the property for a sum less than that remaining unpaid; (3) if the seller takes possession of the property upon default of the buyer and does so as owner; (4) and as such owner sells or otherwise uses the property; (5) under this situation the seller can not recover any portion of the unpaid purchase price. In the instant case it can hardly be said that the note containing the conditional sales agreement is the ordinary contract of conditional sale. This is true for the following reasons, some of which are more potent than others:

(1) It is a promissory note containing conditional sales provisions. (2) It contains a clause authorizing the seller to declare the note due and take possession of the property at any time he may deem himself insecure even before the maturity of the note. (3) There is the further provision that he may sell the property at private sale and endorse the proceeds, less the amount of all expenses, on the note.

This latter provision strongly indicates that he is not to sell the property as owner but rather for the account of the purchaser since the amount is to be credited on the note. Under sub-heading "b" at page 94, the author sets forth the following text:

"It has been held that the seller of property by conditional sale may resume possession thereof to increase his security and re-sell it on account of the vendee if the latter is in default, and where this remedy is given by the contract if the proceeds of the sale are insufficient to satisfy the amount due on a purchase price the seller may in an appropriate action hold the buyer for the residue."

Supplemental annotations under this same sub-heading will be found in Vol. 83

A.L.R. at page 963. Many cases are cited in support of the text.

The case of Van Den Bosch v Bouwman (Mich.), 101 NW, 832, is very similar in its facts to the instant case. The note in question was worded as follows:

"After date I promise to pay to Peter Van Den Bosch, or bearer, One Hundred Sixty Dollars, payable at the residence of Peter Van Den Bosch, Noordeloos, Mich., for value received, by monthly payments of $10.00 per month or more; said first payment to be made June 10th, A. D., 1901. The express condition of the sale and purchase of a sorrel horse, harness and top buggy, for which this note is given, is such that the title, ownership or possession does not pass from the said payee until this note and interest is paid in full and that the said payee has full power to declare this note due and take possession of said above described property at any time he may deem himself insecure, even before the maturity of the note, and upon taking possession, either before or after the maturity of the note, said payee may sell the same either at public or private sale, without notice; or said payee may retain the same without sale, and in such case the amounts paid on this note shall be deemed to be compensation only for the use, wear and tear of said property.

(Signed) Tom Bowman."

It further appears from the statement of the case that after certain payments had been made plaintiff took possession of the property, sold the same for a sum less than the amount remaining due, sued for the balance and recovered.

Error was prosecuted from this judgment and the judgment was affirmed by the Supreme Court. Judge Montgomery rendering the opinion makes the following observation:

"The question is, what does the contract fairly import? Courts have no right to refine definitions in a manner to override the expressed intent of the parties. This contract gave the seller two options: (1) He could retake the property and treat the amount paid as payemnt for its use and 'wear and tear'; (2) he was authorized to seize and sell the same at public or private sale. He chose the latter. The question is upon whose account the sale was made under the terms of this contract. The purpose of the sale provided for by the contract is plain. It is to satisfy, so far as the amount realized will do so the

amount remaining unpaid. Can it be said that the intention of the parties as expressed was that whatever remained due should be paid by the maker of this note? We think this question should be answered in the affirmative. There is an express promise to pay and it is not abrogated nor satisfied by authority given to sell and apply the proceeds of the sale in part payment. There is no reason why contracts of this nature should not be construed and enforced according to the plainly express purpose of the parties."

The language of the note in the instant case so far as it relates to what is termed the conditional sales provision is in almost the identical language as in the Van Den Bosch case, supra. In the case of Pennell v McGarity, 107 SE, 352, the court analyzed the provisions of the contract wherein it was expressly provided that the seller might retake possession of the property, sell it at public auction and apply the proceeds from sale upon a note given for purchase price. In commenting the court stated that the party to the contract could waive any right he has under the law providing he does not thereby injuriously affect the public interest or the interest of others not party to the contract. It was further stated that Pennell by signing the contract of sale did waive his right to deny the collection of the balance due.

It can serve no useful purpose to specifically cite and comment on the numerous cases contained in the annotations in Volumes 37 and 83 A.L.R., supra. Suffice to say that we think we note a growing tendency to recede from the strict rule appertaining to conditional sales as announced in the earlier cases and to give consideration and effect to the express language and spirit of the contract.

No doubt this is largely due to the fact that it has been continuously and universally held that the seller under the ordinary conditional sales contract has the election of remedies; that is, he may (1) confine himself strictly to the remedy under conditional sale by retaking the property and thereby cancelling the debt; (2) he may at his election treat the sale as absolute and sue for personal judgment; (3) he may pursue the remedy of equitable foreclosure in which case by action of law he treats the sale as absolute and brings his court procedure in order to preserve his lien; (4) other remedies, foreclosure by replevin, etc.

These are remedies that are very similar to the rights of mortgagors under chat-

tel mortgage. If the seller brings court proceedings in the nature of equitable foreclosure, it is clearly determined that after the sale and distribution the seller may recover the balance due. Where the contract, as in the instant case, provides that the seller (without court action) may retake the property, sell it and apply the proceeds on the note, the buyer thereby has agreed to a procedure out of court identical with equitable foreclosure.

Under the facts of the instant case we can not see in this contract anything repugnant to public policy or that contravenes provisions of law.

The conditional sale act as contained in the code has no application to this case. This is due to the fact that under the evidence it is shown that twenty-five per cent had not been paid by the defendants. In so determining the trial court declined to give credit for Hammermill as claimed by defendant. The record amply supports this finding.

As to the defendant Arthur Lochner there is presented the defense that at the time of signing the notes in question he was not twenty-one years of age. The record supports this contention and the trial court so found.

According to the undisputed evidence Arthur Lochner was of age June 10, 1931. The several notes in question were executed in March and September, 1930.

The plaintiff Fouts did not know nor was he advised that the defendant Arthur Lochner was a minor at the time of the execution of the several notes. According to the record this knowledge did not come to the plaintiff until answer was filed in this action in 1935. Counsel for plaintiff insist that defendant Arthur Lochner is estopped at this late date to raise the question of minority for the reason that he continued to retain and use the property in question for almost twenty months after attaining his majority.

The case of **Mestetzko v Elf Motor Co., 119 Oh St, 575,** announces the principle that where it is sought to avoid a minor's contract such person on attaining his majority must, within a reasonable time, return the property and thereby avoid his obligation.

This was not done in the instant case.

Counsel for Arthur Lochner contend that he signed the notes as surety and therefore never had the property in his possession except as he used it for his father.

The trial court determined that Arthur Lochner signed as principal, and we are not inclined to disturb this finding.

It follows that the defense of minority can not avail the defendant Arthur Lochner.

It is also the contention of counsel for defendants that the trial court was in error in refusing to dismiss an attachment procured by plaintiff at the time of bringing his original action.

The affidavit for attachment contained the following:

"The affiant further says that Arthur Lochner and C. C. Lochner, the defendants, are about to convert their property, in whole or in part, into money for the purpose of placing it beyond the reach of their creditors."

Counsel for Arthur Lochner insist that there is no evidence supporting this ground for attachment.

The record discloses that Arthur Lochner advertised all his property for sale, intending thereafter to enter business as manager of an elevator in an adjoining county. The sale was had, thereby converting all his property into money.

The clerk of sale was garnisheed and answered as to the fund in his hands. This fund was subject to a prior chattel mortgage and by agreement of counsel so much thereof as was necessary was withdrawn and the chattel mortgage paid in full. The balance was retained in the hands of the clerk of court of Miami County pending the final determination of this cause. Since the decision in the lower court, by agreement the clerk has deposited the fund in an interest bearing account.

Considering the fact that the defendant Arthur Lochner was denying liability in the instant case, and that his property was converted into cash in connection with other surrounding circumstances would warrant the trial court in refusing to dismiss the attachment.

Finding no prejudicial error in the trial and proceedings of the court below, the same will be affirmed at costs of plaintiff in error.

Exceptions will be allowed to plaintiff in error.

Entry may be drawn in conformity to the above opinion.

HORNBECK and SHERICK, JJ, concur.